Appeal No. 12-1778

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

**Andrea Jackson Cannon,**
**Plaintiff-Appellant**

**v.**

**Wells Fargo Bank, N.A.,**
**Defendant-Appellee**

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

―――――――――――――

### CORRECTED BRIEF OF APPELLEE

―――――――――――――

**Wells Fargo Bank, N.A.**

Russell J. Pope
TREANOR POPE & HUGHES, P.A.
29 W. Susquehanna Avenue, Suite 110
Towson, Maryland 21204
rjpope@tph-law.com
410-494-7777
*Attorneys for Appellee*

# TABLE OF CONTENTS

STATEMENT OF THE CASE.................................................................... 1

STATEMENT OF FACTS ...................................................................... 2

SUMMARY OF THE ARGUMENT ...................................................... 6

ARGUMENT ........................................................................................... 9

   I.   STANDARD OF REVIEW................................................................ 9

   II.  WELLS FARGO COULD NOT BE HELD LIABLE IN TORT TO THE APPELLANT. .................................................................9

   III. WELLS FARGO DID NOT MISREPRESENT OR CONCEAL ANYTHING FROM THE APPELLANT. .................................. 12

   IV. WELLS FARGO DID NOT OWE A FIDUCIARY DUTY TO THE APPELLANT. ................................................................. 15

   V.  WELLS FARGO WAS NOT UNJUSTLY ENRICHED............................ 16

   VI. NO PROPERTY OR FUNDS OF THE APPELLANT WERE CONVERTED. .............................................................. 19

   VII. WELLS FARGO DID NOT BREACH ANY DUTY OF DUE CARE TO THE APPELLANT........................................... 20

   VIII. WELLS FARGO DID NOT VIOLATE THE MARYLAND CONSUMER PROTECTION ACT. ......................................... 22

   IX. THE BANK DID NOT BREACH ITS CONTRACT WITH THE APPELLANT. ................................................................. 24

CONCLUSION ...................................................................................... 34

CERTIFICATE OF SERVICE ............................................................. 35

TABLE OF AUTHORITES

Cases

*Alleco, Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 195, 665 A.2d 1038, 1047 (1995).................................................................. 13

*Allstate Ins. Co. v. Warns*, 2012 WL 681972 at *10 (D.Md. Feb. 29, 2012)......... 25

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) .............................................9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)...... 9, 33

*Blondell v. Littlepage*, 413 Md. 96, 991 A.2d 80 (2010)................................... 9, 10

*Boatel Industries, Inc. v. Hester*, 77 Md. App. 284, 302-03, 550 A.2d 389, 398-99 (1988).................................................................................................. 24

*Brand Iron, Inc. v. Koehring Co.*, 595 F.Supp. 1037, 1040 (D. Md. 1984) .......... 32

*Cannon v. Wells Fargo Bank,* Case No. 1:12-cv-00465-CKK, U.S. District Court for the District of Columbia ...................................................................... 5, 27

*Caroline County Commissioners v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95, 747 A.2d 600, 607 (2000)................................................................. 17

*Cozzarelli v. Inspire Pharmaceuticals Corp.*, 549 F.3d 618 (4th Cir. 2008) ......... 13

*Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 841 A.2d 828 (2004) ................................................................................................. 19

*Dunnaville v. McCormick & Co.*, 21 F.Supp.2d 527, 535 (D. Md. 1998) ............. 18

*Fegeas v. Sherrill*, 218 Md. 472, 476, 147 A.2d 223, 225 (1958)......................... 15

*Fisher v. Maryland Dept. of Public Safety*, 2010 WL 2732334 at 2-3 (D.Md. July 8, 2010).............................................................................................. 26

*FLF, Inc. v. World Publications, Inc.*, 999 F.Supp. 640, 642 (D. Md. 1998) ........ 18

*G&M Oil Co. v. Glenfed Fin Corp.*, 782 F.Supp 1085 (D. Md. 1991) ................. 11

*G&M Oil Co. v. Glenfed Fin. Corp.*, 782 F.Supp. 1078 (D. Md. 1989) ............... 11

*Gasner v. Dinwiddie County*, 162 F.R.D. 280 (E.D.Va. 1995) ............................ 26

*GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543 (4th Cir. 2001) ............................................................................................................9

*Green v. H&R Block*, 355 Md. 488, 525, 735 A.2d 1039, 1059 (1999)................. 14

*Howard Oaks, Inc. v. Maryland National Bank*, 810 F.Supp. 674, 676 (D. Md. 1993) .......................................................................................................... 11

*Jacques v. First National Bank*, 307 Md. 527, 515 A.2d 756 (1986) ............... 9, 10

*Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md. 476, 518 A.2d 174 (1986) ......................................................................................................... 20

*Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 439 A.2d 534 (1982)................. 13

*Martens v. First National Bank of Maryland*, 1988 WL 252577 (D. Md. 1988)................................................................................................. 11, 13

*Montgomery Cable Vision Ltd. Partnership v. Beynon*, 116 Md. App. 363, 392, 696 A.2d 491 (1997)................................................................................... 21

*Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992).................... 33

*Parker v. Columbia Bank*, 91 Md. App. 346, 604 A.2d 521 (1992) ........... 9, 11, 15

*Philips v. County Mem. Hosp.*, 572. F.3d 176 (4th Cir. 2009) ................................ 26

*Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999)......................................... 26

*Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 656-57, 679 A.2d 540 (1996) ..... 21

*Taylor v. NationsBank, N.A.*, 365 Md. 166, 776 A.2d 645 (2001)......................... 25

*United States v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)...................... 1, 13

*Waller v. Maryland National Bank*, 95 Md. App. 197, 620 A.2d 381 (1993) ....... 11

*Yousef v. TrustBank Sav. F.S.B.*, 81 Md. App. 527, 568 A.2d 1138 (1990) .... 11, 15

Statutes

§ 13-101(c)(1), Commercial Law Article Annotated Code of Maryland............... 23

§ 13-101(d), Commercial Law Article, Annotated Code of Maryland ................. 23

Rules

Rule 9(b), Federal Rules of Civil Procedure............................................................. 13

Rule 12(b)(6), Federal Rules of Civil Procedure .................................................. 2, 9

## STATEMENT OF THE CASE

This case was filed by the Appellant, Andrea Cannon, who is the owner/operator of several day care centers in Washington, D.C. and the surrounding Maryland and Virginia suburbs. At all times relevant hereto, Wells Fargo was acting as the servicer for the mortgage loan on a day care center she owns in Prince George's County, Maryland. The Appellant initially sued just Wells Fargo, claiming that the Bank was not authorized to purchase substitute hazard insurance coverage for her day care center after she failed to provide proof of insurance, and seeking millions of dollars in damages. However, on April 23, 2012, the Appellant filed an Amended Complaint pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. Appx. 78-137. In her amended pleading, the Appellant added five new Counts and joined two additional Defendants, QBE Specialty Insurance Corporation and QBE First Insurance Agency, Inc. (collectively the "QBE Defendants").[1] The QBE Defendants allegedly acted as the procuring agent and issuer for the Lender Placed Insurance ("LPI") policy at issue in this case.

---

[1] The QBE Defendants were never served with a Summons or a copy of the Amended Complaint.

In her Amended Complaint, the Appellant purported to set forth the following Counts against Wells Fargo[2]: (I) breach of contract; (II) malicious breach of contract; (IV) violation of the Maryland Consumer Protection Act; (VI) fraudulent concealment; (VII) fraud; (VII)[3] breach of fiduciary duty; (VIII) unjust enrichment; (IX) conversion; and (X) negligence/negligent misrepresentation. Wells Fargo filed a Motion to Dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the basis that none of these Counts states a claim against Wells Fargo upon which relief can be granted. After a lengthy hearing on June 8, 2012, the U.S. District Court below agreed, and granted Wells Fargo's Motion in its entirety. The Appellant filed a timely notice of appeal thereafter.

## STATEMENT OF FACTS

On May 8, 2007, the Appellant took out a mortgage loan with Wells Fargo's predecessor-in-interest, Wachovia Bank, N.A., which was secured by a Deed of Trust on her day care center property located at 12400 Fort Washington Road, Fort Washington, Maryland 20744 (the "Property"). The original principal amount of

---

[2]   The other Counts were directed against only the QBE Defendants.

[3]   The Appellant mistakenly labeled two separate consecutive Counts with the same Count number – Count VII. She made the same mistake with regard to Count IV, which also appeared twice. Thus, while the highest Roman numeral identifying a Count that appeared in the Amended Complaint is "X", there actually were twelve separate Counts set forth in the Amended Complaint.

the loan was $178,659.60.  Appx. 94.  *See also* Appx. 6-19 (copy of Deed of Trust).[4]

Pursuant to that Deed of Trust, the Appellant was required to maintain adequate hazard insurance on the Property, which stands as collateral for the outstanding mortgage loan obligation. *See* Appx. 6-19.  In the event the Appellant failed to maintain adequate insurance on the Property, Wells Fargo was entitled to obtain substitute coverage ("Lender-Placed Insurance" or "LPI") at its own initiative:

> If Trustor fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Trustor's equity in the property, or the contents of the property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  *Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Trustor could have obtained.*  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by the Security Instrument.
> . . .

---

[4] The six exhibits attached to the original Complaint were not reproduced and attached to the Amended Complaint, although they are referenced in the text of the Amended Complaint. Because they are now part of the record, Wells Fargo will continue to refer to these exhibits herein.  That said, the actual exhibit label on the Deed of Trust document reads only "DT." However, this particular document was electronically filed as "Document 1-6," indicating that it was intended to be the sixth exhibit to the Complaint.  Appx. 6-19.

> If Lender requires, Trustor shall *promptly give to Lender copies of all policies, renewal certificates, receipts of paid premiums and renewal notices*.

Appx. 9 (emphasis added). The Appellant in this case did not contest her obligation to maintain hazard insurance, to provide proof thereof when requested, or the Bank's right to obtain substitute LPI coverage in the absence of such proof. The gravamen of the Appellant's case against Wells Fargo is that it improperly obtained substitute LPI coverage on the Property while her privately-obtained insurance was in effect, thereby creating unnecessary redundant coverage at an excessive premium.

However, the Appellant has failed to acknowledge, both in her Brief here as well as in her pleadings filed in the U.S. District Court below, the fact that Wells Fargo received a "notice of cancellation" dated April 15, 2010 regarding her prior hazard insurance policy for the Property. Appx. 146. That notice from The Travelers Insurance Company informed the Bank that "the policy designated above has been cancelled. Your interest under the policy is cancelled as of the date of cancellation above." *Id.* Receipt of this notice of cancellation triggered a series of letters to the Appellant, reminding her of her obligation to maintain adequate property insurance and advising her of the Bank's right to obtain replacement LPI if she failed to do so. *See* Appx. 25-30 (letter dated May 20, 2010); Appx. 32-34

(letter dated June 22, 2010); Appx. 36-55 (letter dated August 3, 2010).[5]  When the Appellant failed to respond to these written notices, Wells Fargo exercised its contractual right under § 5 of the Deed of Trust (quoted above) and obtained replacement LPI to protect its collateral interest.

The annual premium for the first LPI policy, which became effective upon cancellation of the prior Travelers policy, was $7,844.30.[6]  Appx. 36, 39, 141. Wells Fargo paid this amount to the QBE Defendants to secure the coverage.  This amount was then posted to the Appellant's mortgage loan account as an outstanding expense item; importantly, it was not billed to or collected from the Appellant.

At the end of the first LPI policy year, the Appellant was notified by letter dated May 17, 2011, that the LPI had been renewed on her day care center for

---

[5]  In an affidavit filed in the U.S. District Court, the Appellant avers that she never received these notice letters from Wells Fargo.  Appx. 138-39.  However, this self-serving denial is belied by the fact that the Appellant has admitted in related proceedings now pending in the U.S. District Court for the District of Columbia (*Cannon v. Wells Fargo Bank,* Case No. 1:12-cv-00465-CKK) that she did, in fact, receive the exact same form notice letters from Wells Fargo in conjunction with LPI that was initiated for another of her day care centers located in the District of Columbia. Copies of those letters were attached to her Complaint in the D.C. litigation as Exhibits 6-8. Thus, the Appellant acknowledges receiving the LPI notice letters for her D.C. day care property but denies receiving the very same form letters that were mailed to her regarding her Maryland day care center property.  Notably, all of the notices for both jurisdictions utilized the identical mailing address and method of delivery to the Appellant.

[6]  Throughout her Brief, the Appellant seems confused about the actual cost of this insurance.  In particular, she takes the annual premium and multiplies it by four, mistakenly believing that the premium was for only a 90 day insurance binder.  *See, e.g.,* Appellant's Brief at 17.  Her confusion does not change the fact that the first annual premium for the replacement LPI was $7,844.30.

another year.  Appx. 57-77.  As before, the Appellant was advised of the annual premium being paid by Wells Fargo – $8,011.20 for the renewal policy – which would provide insurance coverage through and including May 5, 2012.  Appx. 61, 139.  As with the initial LPI annual premium, this renewal premium also was posted to the Appellant's account as an expense item.  Again, it was not billed to or collected from her.

On or about January 10, 2012, after the Appellant finally tendered proof of privately obtained replacement insurance on the Property, Wells Fargo cancelled the LPI policies for both years and reversed the two premium expense entries that had been posted to the Appellant's mortgage loan account.  Appx. 3-4, 142. Importantly, during the timeframe when the two annual mortgage premiums remained posted as expense advances to the Appellant's mortgage loan account, Wells Fargo never actually collected any of those sums from the Appellant, nor was her regular monthly mortgage payment affected in any way by the posting of these charges to her account.  Appx. 142.  A month after these LPI premium charges were reversed, the Appellant filed the instant lawsuit.

## SUMMARY OF THE ARGUMENT

The Appellant, individually, and on behalf of a putative class of similarly situated persons she sought to represent, sued Wells Fargo and the QBE Defendants under twelve separate legal theories, all derived from the central

6

allegation that the Bank improperly obtained LPI on her business property after she failed to produce proof of insurance in response to numerous legitimate requests for same. She intimated (inaccurately) that she actually was caused to pay the premiums for the duplicative but unnecessary LPI coverage. However, none of the Counts in the Amended Complaint stated a claim against Wells Fargo upon which relief could be granted.

First, six of the nine Counts directed against Wells Fargo in this case allege common law torts. However, under applicable Maryland law, tort claims arising from a contractual relationship cannot give rise to liability absent "special circumstances" that support the creation of a separate tort duty. No such special circumstances have been alleged in this case.

Next, the Appellant failed to satisfy the elemental pleading requirements for all of her common law tort claims. She did not identify any misrepresentation issued by Wells Fargo with the degree of particularity demanded by the Federal Rules. Neither did she identify any tangible or intangible property that today remains in the hands of Wells Fargo. Perhaps most important, she did not suffer any actual damages as a result of the conduct set forth in the Amended Complaint, leaving Wells Fargo to wonder why she filed this case at all *after* receiving notification that the LPI premium charges to her account were being reversed. Appx. 3-4. In short, there was no substantiation in the Amended Complaint for her

claim that Wells Fargo breached any duty it might have owed to her, fiduciary or otherwise.

Additionally, neither the Appellant nor this particular transaction fell within the ambit of the Maryland Consumer Protection Act. She is a business owner, operating a licensed day care center out of the Property at issue. Her insurance (for which the LPI was obtained as a replacement) is a *commercial* general liability policy. Accordingly, the Appellant was not a "consumer" as defined in the statute and its remedies were not available to her in this case.

Finally, the Appellant could not point to a single provision in her contract with Wells Fargo that had been breached. In fact, every action undertaken by Wells Fargo was specifically authorized by the written agreement between the parties. Furthermore, the very existence of that written agreement precludes the Appellant's claim for unjust enrichment. Even if that were not the case, she did not identify any tangible benefit in the hands of Wells Fargo for which retention would be unjust.

The U.S. District Court below correctly found that each of the claims in the Amended Complaint should be dismissed. For the reasons set forth below, that decision should be affirmed in all respects.

ARGUMENT

## I.    STANDARD OF REVIEW.

An appellate court generally reviews *de novo* the granting of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543 (4th Cir. 2001). Although factual allegations are accepted as true for the purpose of a Rule 12(b)(6) motion, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In order to survive such a motion, a complaint must contain sufficient facts to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007).

## II.    WELLS FARGO COULD NOT BE HELD LIABLE IN TORT TO THE APPELLANT.

Counts VI, VII, VII, VIII, IX, and X in the Amended Complaint all purported to state common law tort claims against Wells Fargo. There was, however, an overarching problem with all of these claims. In Maryland, a tort duty usually does not arise out of a contractual relationship, except in the presence of special circumstances. *See Blondell v. Littlepage*, 413 Md. 96, 991 A.2d 80 (2010); *Jacques v. First National Bank*, 307 Md. 527, 515 A.2d 756 (1986). For example, in the context of negligence and fraud claims, the Maryland Court of Appeals has stated:

> The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.
>
> . . .
>
> Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition of the imposition of tort liability.

*Blondell, supra*, 413 Md. at 120-21, 991 A.2d at 94-95.

The *Blondell* Court relied upon the earlier decision in *Jacques v. First National Bank, supra*. In *Jacques*, the Maryland Court of Appeals considered whether a bank could be sued in tort for beach of an alleged duty to exercise due care in the processing of a loan application. On the unique facts of that case, the Court found special circumstances attending the loan application that gave rise to a tort duty. Specifically, the Court found that the bank had expressly promised the borrower both to process his loan application and to lock in a fixed interest rate for ninety days. 307 Md. at 537, 515 A.2d at 761. Furthermore, the bank knew of the particular circumstances in which the real property acquisition was taking place, and therefore should have known the consequence to the borrower if the loan application was not handled with due care. *Id*. at 537-38, 515 A.2d at 761.

Since the *Jacques* case was decided, subsequent decisions in the Maryland courts have specifically declined to recognize tort claims against banks in the absence of the plaintiff being able to identify special circumstances that would give

rise to a tort duty. *See, e.g., Martens v. First National Bank of Maryland*, 1988 WL 252577 (D. Md. 1988)(granting motion for summary judgment in favor of lender on borrower's negligence claim), *aff'd*, 875 F.2d 315 (4th Cir. 1989); *G&M Oil Co. v. Glenfed Fin. Corp.*, 782 F.Supp. 1078 (D. Md. 1989)(same); *Yousef v. TrustBank Sav. F.S.B.*, 81 Md. App. 527, 568 A.2d 1138 (1990)(upholding dismissal of borrower's negligence claim); *G&M Oil Co. v. Glenfed Fin Corp.*, 782 F.Supp 1085 (D. Md. 1991)(granting motion for summary judgment in favor of lender on borrower's negligent misrepresentation claim), *aff'd* 947 F.2d 940 (4th Cir. 1991); *Parker v. Columbia Bank*, 91 Md. App. 346, 604 A.2d 521 (1992)(upholding dismissal of borrower's negligent misrepresentation claim in the absence of "special circumstances"); *Waller v. Maryland National Bank*, 95 Md. App. 197, 620 A.2d 381 (1993)(upholding summary judgment against borrower's negligence claim); *Howard Oaks, Inc. v. Maryland National Bank*, 810 F.Supp. 674, 676 (D. Md. 1993)(granting motion to dismiss borrower's negligent breach of contract and fraud claims).

The allegations Appellant presented in her Amended Complaint all relate to a business contract – a Note and Deed of Trust pledged to secure a commercial mortgage loan. As such, the relationship was sourced in a contract and the Appellant did not plead any facts to support any kind of special relationship that would make this case an exception to the general rule of law. Therefore, all of the

tort claims asserted here are precluded because of the Appellant's failure to allege sufficient special circumstances necessary to create any tort duties beyond the contractual duties undertaken by mutual consent in the four corners of the written agreement. In the absence of such special circumstances, the Maryland courts do not recognize any tort arising out of a contract. For this reason alone, the District Court's dismissal of Counts VI-X was proper.

### III. WELLS FARGO DID NOT MISREPRESENT OR CONCEAL ANYTHING FROM THE APPELLANT.

Turning to the individual tort claims, in Count VI and the first of the two Count VIIs of Appellant's Amended Complaint, she charged Wells Fargo with fraud/deceit, claiming that Wells Fargo had actual knowledge of her existing insurance, that it obtained the LPI unnecessarily, unilaterally, and without her knowledge for the purpose of receiving a kick back. She also claimed that Wells Fargo perpetrated a fraud upon her and concealed the existence of the LPI. *See* Appx. 99-100; 127-29

However, the Appellant failed to meet the elemental pleading requirements for fraud. "In Maryland, to state a cause of action in fraud or deceit, a Plaintiff must allege facts disclosing: (1) that the defendant made a false representation to the Plaintiff, (2) that is falsity was either known to the Defendant or that the representation was made with reckless indifference to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the

plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Alleco, Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 195, 665 A.2d 1038, 1047 (1995); *see also, Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 439 A.2d 534 (1982). In this case, the Appellant failed to allege not just one, but practically all of the five elements necessary in order to state a prima facie case for fraud or deceit. For example, because the Appellant never paid any LPI premium, she did not suffer any compensable injury here. Furthermore, she did not demonstrate exactly what Wells Fargo said or communicated that was false, or how she possibly could have relied on such a representation. In short, the allegations of fraud lack any real substance.

This lack of sufficient factual allegation is especially problematic because Appellant's fraud claim was subject to heightened pleading requirements. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that "the pleader must state the time, place, and content of the false representations, the facts misrepresented and what was returned or given up as a consequence of the fraud." *United States v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981); *see also Cozzarelli v. Inspire Pharmaceuticals Corp.*, 549 F.3d 618 (4th Cir. 2008). The Appellant here did not make even a cursory attempt to comply with Federal Rule

9(b) in her Complaint. Wells Fargo was left to guess at what representations it made that are alleged to be false, who communicated them, and how and when they were transmitted. The first Count VII claim was woefully deficient both substantively and procedurally. Accordingly, the dismissal of Appellant's fraud claim was proper.

With regard to the fraudulent concealment claim in Count VI, the elements of this cause of action in Maryland are as follows:

> (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

*Green v. H&R Block*, 355 Md. 488, 525, 735 A.2d 1039, 1059 (1999). This claim failed for the same reason the related common law fraud claim failed – namely, because the Appellant did not allege sufficient facts to satisfy all five elements of the cause of action. Most notably, the justifiable reliance and actual damages elements were completely absent from the Amended Complaint.

Furthermore, the Appellant did not allege what affirmative representations or active conduct kept her from discovering material facts. As the Maryland Court of Appeals has stated:

> For all intents and purposes, therefore, fraudulent concealment includes the situation where the defendant actively undertakes conduct or utters statements designed

> to, or that would, divert attention away from the defect.
> A claim of failure to disclose, on the other hand, requires
> only that the defendant remain silent about, or omit, facts
> that the defendant had a duty to disclose.

*Fegeas v. Sherrill*, 218 Md. 472, 476, 147 A.2d 223, 225 (1958).  There was no

allegation in the Amended Complaint which suggested that Wells Fargo diverted

the Appellant's attention away from discovering the fact that LPI had been

obtained for her commercial property, the amount of the related premiums, or her

opportunity to produce adequate proof of insurance which would (and ultimately

did) precipitate the cancelation of the LPI.  Indeed, all of these facts were fully and

repeatedly communicated to the Appellant before the LPI was acquired in the first

instance.  Accordingly, the dismissal of Count VI of the Amended Complaint was

proper.

> IV.    WELLS FARGO DID NOT OWE A FIDUCIARY DUTY TO THE
>        APPELLANT.

In the second of the two Count VIIs in the Amended Complaint, the

Appellant charged Wells Fargo with breach of fiduciary duty in its purchase of the

LPI policy at issue.  However, under well-settled Maryland law, "the relationship

of a bank to its customer in a loan transaction is ordinarily a contractual

relationship between a debtor and a creditor, and is not fiduciary in nature."

*Parker v. Columbia Bank*, 91 Md. App. 346, 368, 604 A.2d 521, 532 (1992).  *See*

*also Yousef v. TrustBank Savings, F.S.B.*, 81 Md. App. 527, 568 A.2d 1134 (1990).

"Courts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Parker, supra*, 91 Md. App. at 369, 604 A.2d at 532.

In the Amended Complaint, the Appellant failed to cite any "special circumstances" or any provision in her loan agreement with Wells Fargo that could conceivably transform the ordinary debtor-creditor relationship into one attended by a heightened fiduciary duty. Thus, there was no basis to find or impose a fiduciary duty on Wells Fargo. Even if there were, the placement of LPI by Wells Fargo in light of the Appellant's refusal to produce evidence of insurance, and the subsequent cancellation of the LPI once that proof was finally tendered, cannot be construed as a breach of any duty, fiduciary or otherwise. For all these reasons, dismissal of this Count in the Amended Complaint was proper.

## V.    WELLS FARGO WAS NOT UNJUSTLY ENRICHED.

In Count VIII of the Amended Complaint, the Appellant alleged that Wells Fargo had been unjustly enriched by the LPI transaction and should be required to disgorge its profits. Appx. 131-32. In particular, the Appellant alleged that she "conferred the following financial benefits" upon Wells Fargo, expressly citing the two separate annual premiums for the LPI. Appx. 132. She further stated that Wells Fargo "should be compelled to disgorge these funds . . . ." *Id*. By use of the

terms "confer" and "disgorge", the Appellant intimated that she actually *paid* both of the LPI premiums, although she never did.  From those premiums, she claimed that a "kick back" was paid to a Wells Fargo affiliate in the form of a commission. However, it is axiomatic that a kick back cannot be extracted from a premium payment and paid to a third party if there is no premium paid by the Appellant in the first instance.

Once again, the Appellant failed to meet the elemental pleading requirements under Maryland law.  In order to set forth a claim for unjust enrichment, three distinct elements must be established: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."  *Caroline County Commissioners v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95, 747 A.2d 600, 607 (2000).  As set forth above, there is no evidence of any benefit conferred on anyone.  Even if the two annual premiums at issue *had* been collected from the Appellant, they would have been paid over to the QBE Defendants and not retained by Wells Fargo.

Finally, her vague references to "profits" retained by the Bank were not substantiated by any details that would give this Court reason to believe Wells

Fargo received any form of profit at all in this transaction. While Wells Fargo was compelled by prudence to purchase substitute LPI due to the Appellant's breach of her duty to provide proof of her own insurance, the corresponding premium charges that were placed on the Appellant's account were subsequently and completely reversed.

Apart from the failure to properly allege the elemental requirements for unjust enrichment, "it is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *FLF, Inc. v. World Publications, Inc.*, 999 F.Supp. 640, 642 (D. Md. 1998); *Dunnaville v. McCormick & Co.*, 21 F.Supp.2d 527, 535 (D. Md. 1998). In the present case, each and every action undertaken by Wells Fargo and about which the Appellant complained was expressly delineated in and authorized by the written contract between them. Thus, even if the Appellant had properly set forth all three elements of this cause of action, the remedy would not be available to her because the subject matter of her claim was covered by an express contract.

For all the foregoing reasons, the Appellant failed to state a claim for unjust enrichment upon which relief can be granted and dismissal of Count VIII was proper.

VI.    NO PROPERTY OR FUNDS OF THE APPELLANT WERE CONVERTED.

In Count IX of her Amended Complaint, the Appellant charged Wells Fargo with liability for common law conversion, claiming that "Defendant illegally obtained Appellant's funds and used the same to unjustly enrich itself through the use of the funds for investment purposes."  Appx. 133.  "The used (sic) of the funds constitutes conversion of the same."  *Id*.  The Appellant also alleged that Wells Fargo "refused to credit Plaintiff with the premiums amount illegally charged to her for the illegal purchase of the CPI along with interest and profit received from said funds by Defendant during the time the funds were used." Appx. 134.  Once again, the Appellant failed to properly allege the elemental requirements for this common law tort and her claims were facially specious in any event.

In Maryland, conversion is an intentional tort, consisting of two elements – a physical act combined with a certain state of mind.  *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 841 A.2d 828 (2004).

> The physical act can be summarized as "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it."
> . . .
> Besides the physical act of exerting unlawful control, there is an intent element to the tort of conversion, and a wide-range of different states of mind qualify.  At a minimum, a defendant liable of conversion must have

> "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights."

*Id.*, 379 Md. at 261, 262, 841 A.2d at 835, 836 (citations omitted). A claim for conversion will lie in regard to intangibles like money so long as the plaintiff can allege that the defendant converted specific segregated or identifiable funds. *Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md. 476, 518 A.2d 174 (1986).

In the present case, because the property that had been allegedly converted here is the Appellant's money, she must be able to identify those funds by location and amount. However, the Appellant never parted with any monies as a result of the Bank's purchase and subsequent cancellation of the substitute LPI. Without being able to identify any tangible or intangible property that had been converted and over which Wells Fargo continued to exercise unlawful dominion or control, this claim necessarily failed and dismissal was proper.

## VII.   WELLS FARGO DID NOT BREACH ANY DUTY OF DUE CARE TO THE APPELLANT.

In Count X of her Amended Complaint, the Appellant charged Wells Fargo with negligence or, alternatively, negligent misrepresentation, in the purchase of the LPI policy at issue in this case. Under Maryland law, in order to maintain an action in negligence, "a plaintiff must prove the existence of four elements: a duty owed him, a breach of that duty, a causal connection between the breach and the injury, and damages." *Montgomery Cable Vision Ltd. Partnership v. Beynon*, 116

Md. App. 363, 392, 696 A.2d 491 (1997).  In contrast, the prima facie elements of the related tort of negligent misrepresentation are "(1) the defendant owing a duty of care to the plaintiff negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff justifiably takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence."  *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 656-57, 679 A.2d 540 (1996).  Yet, regardless of whether this Count was treated as one for negligence or negligent misrepresentation, the Appellant once again failed to allege the requisite elements.

First and foremost, the Appellant could not point to any manner in which Wells Fargo breached any duty of care it might have owed to her.  The Appellant precipitated the purchase of LPI by her own refusal to respond to several reasonable requests to produce proof of insurance on the Property.  Only when *she* breached the contract by not providing evidence of insurance was Wells Fargo required to invoke its rights defined in the Deed of Trust and obtain the substitute LPI policy.  Further, contrary to the suggestions made by the Appellant in her pleading, her consent was not required and she was given ample warning of the

intended purchase of the LPI through a series of letters and notices Wells Fargo sent to her.

Finally, the Appellant did not show how she relied on any statement that was made by any Wells Fargo employee, or how she was injured as a result of the claimed breach of duty here. In fact, she did not suffer any injury at all. Accordingly, the dismissal of Count X of the Amended Complaint was proper.

VIII.   WELLS FARGO DID NOT VIOLATE THE MARYLAND CONSUMER PROTECTION ACT.

All of Appellant's tort claims were deficient as a matter of law, as discussed above. Turning to the non-tort claims – i.e. violation of the Maryland Consumer Protection Act and breach of contract – these both failed as well.

In Count V of the Amended Complaint, the Appellant purported to set forth a claim for violation of the Maryland Consumer Protection Act, § 13-101 *et seq.*, Commercial Law Article, Annotated Code of Maryland. However, while the Appellant nakedly asserted that she was a "consumer" under the statute, and that the Property was "residential" in character (Appx. 84), her own Exhibits belied these contentions. For example, in Exhibit 1 to the Amended Complaint, the "insured" was identified as "Fort Washington Child Dev. Ctr." Appx. 1. This identification was repeated on Appellant's Exhibit 1-A, wherein the "named insured" also was specified to be the "Fort Washington Child Development Center." Appx. 2. In point of fact, the building was not the Appellant's

22

"residence" as she suggested; indeed, it was not anyone's residence. The Property actually was being used for a commercial enterprise. This reality is underscored on Appellant's Exhibit 1-A to the Amended Complaint where the insurance product was labeled as "BusinessPro Property Coverage." Appx. 2. This "BusinessPro" policy is a type of a "*commercial* general liability" policy, not a consumer homeowner policy. Appx. 1 – checked block (emphasis added).

The Maryland Consumer Protection Act defines "consumer" as follows: "'consumer' means an actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit." § 13-101(c)(1), Commercial Law Article Annotated Code of Maryland. The terms "consumer credit," "consumer debts," "consumer goods," and "consumer services" are further defined collectively as "credit, debts or obligations, goods, real property, and services which are *primarily for personal, household, family or agricultural purposes.*" § 13-101(d), Commercial Law Article, Annotated Code of Maryland. In the circumstances presented in this case, the Appellant was not a "consumer" and the LPI at issue was not intended "primarily for personal, household, family or agricultural purposes." She is a business owner/operator and the Property at issue is one of her several day care centers in the region.

"The purpose of the Consumer Protection Act as a whole is to protect the consumer, by setting minimum standards, and to restore an 'undermined' public

confidence in merchants." *Boatel Industries, Inc. v. Hester*, 77 Md. App. 284, 302-03, 550 A.2d 389, 398-99 (1988)(internal citations omitted). In evaluating the word "primarily" as it relates to personal, household, family, or agricultural purposes in the statutory definition, the Maryland courts have concluded that the statute's main purpose is "protecting the consumer" while being "less concerned with protecting businessmen." *Id.*, 77 Md. App. at 304, 550 A.2d at 399.

Stated simply, although the Appellant claimed to be a "consumer" under the statute, this was simply a "naked assertion devoid of further factual enhancement." *Bell Atlantic v. Twombly, supra*, 550 U.S. at 555 n.3. The Exhibits she filed with her initial Complaint revealed that the Property at issue was one of the several day care centers owned and operated by her, that it was not being used as anyone's residence, and that the insurance coverage she obtained through her agent for the Property was commercial and not household in nature. Accordingly, she failed to sufficiently allege her status as a legitimate "consumer" so as to bring the facts of this case within the ambit of the Maryland Consumer Protection Act. For this reason, the dismissal of this Count was proper.

IX.    THE BANK DID NOT BREACH ITS CONTRACT WITH THE APPELLANT.

In Counts I and II of her Amended Complaint, Appellant purported to bring claims for breach of contract and malicious breach of contract against Wells Fargo. Appx. 111-17. These claims, however, were deficient as a matter of law as well.

"Under Maryland law, the elements of a breach of contract claim are (1) a contractual obligation and (2) a material breach of that obligation." *Allstate Ins. Co. v. Warns*, 2012 WL 681972 at *10 (D.Md. Feb. 29, 2012) *citing Taylor v. NationsBank, N.A.*, 365 Md. 166, 776 A.2d 645 (2001). While there certainly was a contract between the parties here, the Appellant could not point to a single provision that had been breached by Wells Fargo.

In her Amended Complaint, the Appellant properly focused on Section 5 of the Deed of Trust as a key provision that defined her responsibility to keep the Property insured at all times and to provide proof of that insurance when requested. That provision also allowed the Bank to obtain LPI when necessary and to charge the cost thereof to the Appellant. *See* Appx. 94-98. However, she nonetheless claimed that Wells Fargo breached this contract by not "informing Plaintiff of its intent to obtain CPI[7] and to charge her with the premium for the purchase of the same, obtaining CPI without Plaintiff's notice, knowledge or consent, not providing Plaintiff with the policy representing the CPI, obtaining the CPI unilaterally and unnecessarily with the full knowledge that Plaintiff had already obtained coverage sufficient to protect Defendant's collateral interest and acting in bad faith as to enforcing the terms of the Contract." Appx. 112. Notably,

---

[7]  The Appellant chose to use the abbreviation "CPI" to refer to the Lender Placed Insurance policy (referred to as "LPI" herein).

Appellant failed to state which specific section of the Deed of Trust was breached. As such, she failed to allege even the most basic element of a breach of contract claim.

In further analyzing this claim, the District Court below took notice of several key documents submitted by Wells Fargo in support of its Motion to Dismiss without converting that Motion to one for summary judgment under Federal Rule 56.[8] *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999); *Gasner v. Dinwiddie County*, 162 F.R.D. 280 (E.D.Va. 1995). In particular, in this Circuit, "documents attached to the motion to dismiss may be considered 'so long as they are integral to the complaint and authentic.'" *Fisher v. Maryland Dept. of Public Safety*, 2010 WL 2732334 at 2-3 (D.Md. July 8, 2010), *citing Philips v. County Mem. Hosp.*, 572. F.3d 176 (4th Cir. 2009). A document is "integral" if its existence is part of the foundation for the plaintiff's claims or if it is relied upon or referenced in the pleadings. *Id.*

In her pleading, the Appellant complained about the temporary LPI policy initiated by Wells Fargo "at some time either in 2010 or 2011" and acknowledged

---

[8]  In the Appellant's Statement of the Issues, she complains that the District Court erred in applying Federal Rule 56 to this case and, in a related vein, in considering the exhibits that were appended to Wells Fargo's Motion to Dismiss without allowing her an opportunity to conduct discovery.  However, the District Court granted Wells Fargo's Rule 12(b)(6) Motion to Dismiss without treating it as a motion for summary judgment under Rule 56.   Accordingly, the Appellant's invocation of Rule 56 is completely unsupported by the record.  Furthermore, the District Court's consideration of the exhibits was entirely proper, as the argument and case authorities cited *infra* reveal.

that the initial annual premium for this policy was $7,844.30 and the renewal premium was $8,011.20. Appx. 95. Apart from this specific reference to the purchase of the LPI, the Amended Complaint was replete with references to the LPI and Appellant's contractual agreement with Wells Fargo. Thus, the series of letters to the Appellant that evidence the LPI purchase "in 2010" and which presented her with the corresponding premium costs were integral to her claims. Accordingly, the notice letters that appear in the Appendix at 25-77 were able to be considered by the District Court.[9]

The first of those documents was dated May 20, 2010, when Wells Fargo sent a letter to the Appellant, after having received notice of cancellation from The Travelers, which stated in pertinent part:

> A recent review of your mortgage documents revealed we do not have complete insurance information for your loan. To ensure proper servicing of your loan, we request that you provide a copy of your insurance policy(ies) as of 5/5/10.
>
> To protect your property, we secured *temporary* insurance coverage through QBE Insurance Corporation

---

[9] Worthy of note is the fact that the Appellant filed a nearly identical Complaint against Wells Fargo in the District of Columbia, presenting many of the same claims there in relation to another of her commercial day care centers located within the District. *See* note 5, *supra.* Attached as Exhibits to her Complaint in the D.C. case were copies of the same form notice letters contained in the Appendix that she received from Wells Fargo in relation to her DC property insurance. *See generally Cannon v. Wells Fargo Bank, N.A.* in the U.S. District Court for the District of Columbia, Case No. 1:12cv-00465-CKK. It is not clear why the Appellant did not similarly append the same notice letters as exhibits to her Amended Complaint in this case.

for your property. This binder cannot be renewed. It covers your real property (dwelling) only for risks of direct loss subject to the terms of the policy. It does not protect your personal property, nor does it provide you with liability protection.

…

*Upon receipt of your sufficient insurance coverage, we will promptly cancel this binder. There is no charge to you if there has been no lapse in coverage.* Without evidence of insurance, we may obtain a one-year policy for your property. The attached binder shows the full-year premium that will be charged for this policy if we do not receive evidence of your hazard insurance effective 5/5/10. Please note the full-year premium for this policy, if issued, will be $7,844.30.

Your loan agreement requires that you provide a copy of your current insurance policy(ies). Receipt of your updated insurance information is crucial to our properly servicing your loan. Please contact your agent or insurance company and purchase coverage. If you have already done so, please request proof of coverage and send it to us at the following address.

…

Since insurance purchased by Wells Fargo Bank insures your property without inspection, the cost may be *substantially higher* than the cost of insurance that you can obtain through your own agent. The insurance purchased by Wells Fargo Bank may provide less coverage than your previous policy. An affiliate of Wells Fargo Bank may receive a commission or other compensation if insurance is obtained by Wells Fargo Bank. A policy purchased on your behalf may be canceled at any time by Wells Fargo Bank, and will be canceled *when you provide evidence of other sufficient insurance coverage.*

Appx. 25-26 (emphasis added).   If this excerpted text of the letter did not catch the

Appellant's eye, the large-type bold-faced warning that underscored the key

elements of the LPI and which was included with this letter could not have escaped

her attention:

**IMPORTANT NOTICE**

**THE ATTACHED IS A BINDER FOR THE
TEMPORARY INSURANCE COVERAGE
OBTAINED BY WELLS FARGO BANK.
THE ATTACHED IS NOT A PREMIUM INVOICE
OR BILL, NOR IS THE ATTACHED AN
INSURANCE POLICY.**

**Wells Fargo Bank has not received Evidence of Insurance Coverage. As part
of your loan agreement, you agreed to provide continuous insurance coverage
on the collateral property.**

**Please contact your insurance agent or insurance company and have them
provide your lender, Wells Fargo Bank, with evidence of insurance coverage
as soon as possible.**

**If Wells Fargo Bank does not receive evidence of insurance, we may obtain
insurance protecting the collateral property. You will be notified if this occurs
and will receive an insurance policy. Under the terms of your loan agreement,
this insurance premium will be charged to your loan account and will be
reflected in applicable Payoff Statements. In the event that a policy is issued,
you may also directly pay for the premium associated with the Lender Placed
Insurance. Please make your check payable to Wells Fargo Bank and forward
it to PO Box 8129, Jacksonville, FL 32239-8129. Payment should not be made
payable to the insurance carrier.**

*See* Appx. 29.

When proof of insurance was not forthcoming, Wells Fargo sent another

letter to the Appellant on June 22, 2010, which stated: "We previously notified you

we have not received a new or renewal insurance policy covering your property. It

appears you do not have insurance coverage as of 5/5/10." *See* Appx. 32.  That

29

letter then went on to repeat almost verbatim many of the same warnings provided

in the previous letter sent on May 20, 2010.

Having still heard nothing from the Appellant or receiving any proof of

insurance, Wells Fargo wrote yet again to the Appellant on August 3, 2010, stating

that LPI had been purchased for the Property, effective from 5/5/10 to 5/5/11:

> Enclosed is the lender placed hazard insurance policy purchased in accordance with your mortgage documents and/or Deed of Trust. This policy was purchased because *we did not receive evidence of hazard insurance coverage for your property.* QBE Insurance Corporation now insures your real property (dwelling). The declaration page shows the annual premium of $7,844.30.
>
> Please understand that under the terms of your loan agreement, this insurance premium will be charged to your loan account and will be reflected in applicable Payoff Statements. If you prefer to pay the premium associated with the lender placed insurance, please make your check payable to Wells Fargo Bank and send it to P.O. Box 8129, Jacksonville, FL 32239-8129. Payment should not be made to QBE Insurance Corporation.
> …
> Upon receipt of your sufficient evidence of insurance coverage, we will promptly cancel this policy.

*See* Appx. 36.

Surprisingly, Wells Fargo still did not receive proof of insurance coverage

from the Appellant and, by letter dated May 17, 2011, the Bank advised her of the

*renewal* of the LPI policy that had now been in effect for a full year.  *See* Appx.

57-77. Once again, the Appellant was advised in that letter that "this policy may be

canceled at any time by giving us proof of other insurance. You will then be charged for only the days that this policy was needed." Appx. 57.

It was not until January 9, 2012, that Wells Fargo finally received proof of insurance from the Appellant's agent. *See* Appx. 1 (Certificate of Liability Insurance dated November 7, 2011). The very next day, Wells Fargo cancelled the LPI policy that had been in effect since May of 2010 and re-credited the Appellant's account with the amount of both annual premiums. *See* Appx. 3-4, 141-42.[10]

In short, the purchase of the LPI policy here was necessitated by the Appellant's own failure to discharge her duty under the Deed of Trust to provide satisfactory written confirmation of extant hazard insurance on the Property. Had she done so, Wells Fargo never would have had to send out the chain of letters or obtain substitute LPI coverage. Perhaps most important, because she ultimately *did* provide evidence of uninterrupted insurance coverage on the Property, the substitute LPI policy was canceled and none of the related charges or premiums ever were collected from the Appellant. Indeed, the posting of those premium charges to her account was reversed, consistent with the written representations previously given to her. *See* Appx. 25 ("there is no charge to you if there has been no lapse in coverage"). Thus, while the Appellant has claimed that she actually

---

[10] The Notices of Cancellation were sent to the Appellant on January 10, 2012, advising her of the LPI policy cancellation, almost four weeks *before* this suit was filed.

paid the LPI premiums for both years, in fact, she never paid any premiums and the Bank did not seek payment of them from her.

Examining each element of this allegation, the Bank issued a sequence of warning letters to the Appellant, each increasing in intensity, and culminating in the purchase of LPI after the Appellant failed to produce any proof of insurance on the Property for over a year and a half. Included in those communications were several warnings, including a declaration of the annual premium amount for the LPI for each of the two successive years it was in force. Wells Fargo admitted that it obtained the LPI "unilaterally" (as the Deed of Trust expressly permits) but disputed that it was unnecessary, considering the Appellant's recalcitrant refusal to produce evidence of insurance in response to the Bank's reasonable requests. The Bank was left completely in the dark by the Appellant as to whether there was any insurance in force protecting the Property and it was compelled to obtain the LPI out of prudence.

In the Amended Complaint, the Appellant added a related claim styled as "malicious breach of contract." Amended Complaint, Count II. However, there is "little in Maryland law evidencing the existence of a tort-contract hybrid like 'malicious breach of contract.'" *Brand Iron, Inc. v. Koehring Co.*, 595 F.Supp. 1037, 1040 (D. Md. 1984). Indeed, Wells Fargo could find no Maryland case which acknowledges that such a cause of action even exists.

The Appellant appeared to have confused a breach of contract claim with the actual malice requirement for punitive damages. Under Maryland law, in order to sustain a claim for punitive damages, a plaintiff must allege actual malice attending the conduct of the defendant. *See Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992). Because the *ad damnum* clause in this Count sought punitive damages in the amount of $5 Million, Appx. 117, Count II was more properly viewed as part of the relief requested for the breach of contract claim set forth in Count I. Stated simply, there is no independent cause of action for malicious breach of contract in Maryland.

That said, the Appellant woodenly invoked a claim that Wells Fargo obtained the placement of the LPI "willfully, intentionally with malice". Appx. 116. However, this pleading constituted nothing more than a "naked assertion devoid of further factual enhancement." *Bell Atlantic Corp., supra*, 550 U.S. at 555, n.3. Even if everything alleged in the Amended Complaint were to be proven as true, the Appellant nonetheless failed to make a case for punitive damages. Absent any factual allegations of actual malice or ill-will on the part of Wells Fargo against the Appellant, the punitive damage component of the Appellant's breach of contract claim could not be sustained. For all the foregoing reasons, the dismissal of Counts I and II of the Amended Complaint was proper.

## CONCLUSION

For all the foregoing reasons, the Appellee, Wells Fargo Bank, N.A., respectfully requests that the dismissal of the Amended Complaint by the U.S. District Court be affirmed in all respects.


                      /s/  Russell J. Pope
                      Russell J. Pope
                      TREANOR POPE & HUGHES, P.A.
                      29 W. Susquehanna Avenue
                      Suite 110
                      Towson, MD 21204
                      (410) 494-7777
                      rjpope@tph-law.com

                      *Attorneys for Appellee, Wells Fargo Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2nd day of November, 2012, a copy of Appellee's Corrected Brief was filed via the CM/ECF system and eight paper copies were delivered to the Court via Federal Express, with two copies being mailed, postage prepaid, to:

> Harry T. Spikes, Esq.
> Law Offices of Harry T. Spikes
> 1703 New Jersey Ave NW
> Washington, DC 20001

      /s/ Russell J. Pope      
Russell J. Pope

## <u>STATUTORY EXCERPTS</u>

<u>Annotated Code of Maryland, Commercial Law Article § 13-101</u>

**§ 13-101.    Definitions**

(a) *In general*. -- In this title the following words have the meanings indicated.

…

(c) *Consumer*. -- (1) "Consumer" means an actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit.

…

(d) *Consumer credit, debts, goods, realty, and services*. -- "Consumer credit", "consumer debts", "consumer goods", "consumer realty", and "consumer services" mean, respectively, credit, debts or obligations, goods, real property, and services which are primarily for personal, household, family, or agricultural purposes.

…